United States District Court
Eastern District of New York

-----------------------------------X

TRUE NORTH MEDICAL OF SUFFOLK, P.C.
and KEVIN MULLINS, MD, P.C.,

*Petitioners*,

- against -

AETNA, INC.; AETNA HEALTH, INC.; and
AETNA LIFE INSURANCE COMPANY,

*Respondents*.

-----------------------------------X

**Memorandum & Order**

No. 26-CV-3110 (KAM)(ARL)

**Kiyo A. Matsumoto, United States District Judge:**

Petitioners True North Medical of Suffolk, P.C. and Kevin Mullins, M.D., P.C. ("Petitioners") filed a complaint under Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, against Respondents Aetna, Inc., Aetna Health, Inc., and Aetna Life Insurance Company ("Aetna") seeking a judicial confirmation of Petitioners' Independent Dispute Resolution award for out-of-network healthcare services provided. On July 21, 2026, the Court entered an Order to Show Cause as to why this action should not be dismissed for lack of subject-matter jurisdiction. Both parties responded to the Court's Order to Show Cause. For the reasons provided below, the Court, pursuant to Federal Rule of Civil Procedure 12(h)(3), finds that it lacks subject-matter

jurisdiction over this action and dismisses the complaint without leave to amend.

**BACKGROUND**

Petitioners commenced this action on May 22, 2026, by filing a complaint against Aetna. (ECF No. 1, Complaint ("Compl.").) The complaint alleges that Aetna failed to make payments in compliance with binding awards issued under the No Surprises Act ("NSA"), 42 U.S.C. §§ 300gg-111 *et seq.*, after an Independent Dispute Resolution ("IDR") process. (Compl. ¶¶ 1-5, 16-18.) Petitioners allege that they attempted other methods to "facilitate compliance" by Aetna before commencing this action, but those efforts were allegedly unsuccessful. (Compl. ¶¶ 19-20.) The complaint, therefore, asserts one cause of action under Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm the IDR award. (Compl. ¶¶ 21-25.) Petitioners also filed a motion to enforce the IDR award on May 22, 2026. (ECF No. 3, Motion to Enforce Judgment.)

On July 21, 2026, however, the Court entered an order to show cause as to why this action should not be dismissed for lack of jurisdiction following the Supreme Court's decision in *Badgerow v. Walters*, 596 U.S. 1, 5, 12 (2022), finding that Section 9 of the FAA does not independently confer federal jurisdiction. (Order to Show Cause dated 07/21/2026). Petitioners timely filed their response to the order to show cause on July 28, 2026, (ECF No. 14,

Petitioners' Response to Order to Show Cause ("Pet'rs.' Resp.")), and Aetna, after receiving an extension, timely filed its response on August 18, 2026. (ECF No. 16, Respondents' Response to Order to Show Cause ("Resp't Resp.")).

**LEGAL STANDARD**

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. CONST., art. III, § 2. In order to adjudicate a "case" or "controversy," a court must exercise subject-matter jurisdiction over the action. "If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) and *United Food & Commercial Workers Union, Local 919 v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). Indeed, a court has a duty to raise the issue of subject-matter jurisdiction *sua sponte* even if neither party has raised the issue. Fed. R. Civ. P. 12(h)(3); *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed 126 (1908)). "A federal court's lack of subject matter jurisdiction is not waivable by the parties, and [the court] must address jurisdictional questions before reaching the merits." *Holt v. Town of Stonington*, 765 F.3d

Case: 26-2913, 10/14/2026, DktEntry: 21.1, Page 4 of 17

127, 130 (2d Cir. 2014) (quoting *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996)).

A plaintiff may assert federal subject-matter jurisdiction by bringing a cause of action "arising under" federal law, such as a federal statute. 28 U.S.C. § 1331. If that statute, however, does not confer a private right of action, then a private party cannot avail itself of a federal court's jurisdiction under that statute. *Angela Cummings, Inc. v. Purolator Courier Corp.*, 670 F. Supp. 92, 94 (S.D.N.Y. 1987) (citing *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 812, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986)).

## ANALYSIS

### I. No Surprises Act Statutory Background

In December 2020, Congress passed the No Surprises Act "to address the issue of patients facing unexpected—and often exceedingly large—medical bills after they receive treatment from out-of-network providers." *Neurological Surgery Practice of Long Island, PLLC v. United States Dep't of Health and Human Services*, 145 F.4th 212, 219 (2d Cir. 2025). The NSA "prohibits out-of-network health care providers from billing healthcare plan members directly for certain items or services." *Id.* (citation omitted). "A provider must instead seek compensation from the patient's healthcare plan." *Id.*; 42 U.S.C. §§ 300gg-111(b)(1)(C)-(D). After receiving the payment request, the healthcare plan must send an

initial payment or issue a notice of claim denial within 30 calendar days. 42 U.S.C. § 300gg-111(a)(1)(C)(iv)(I). If the out-of-network provider disagrees with the payment amount or the denial of the claim, it may "initiate open negotiations" with the healthcare plan to determine an agreed upon amount for the provider's services within the 30-day period beginning on the day that the provider receives the initial payment or claim denial. *Id.* § 300gg-111(c)(1).

If the provider and the plan fail to reach an agreement during the open negotiations, either party may, during the 4-day period starting on the day after the open negotiations period, "initiate the independent dispute resolution process." *Id.* § 300gg-111(c)(1)(B). Within 10 days of a certified IDR entity being selected, the parties must submit their compensation proposals to the IDR entity, and the IDR entity "must then render a decision choosing one of the proposals within 30 days." *Neurological Surgery*, 145 F.4th at 219 (citing 42 U.S.C. §§ 300gg-111(c)(5)(A)–(B)). The IDR entity's decision is binding subject to a limited judicial review under four provisions of Section 10 of the FAA, as described below. *Id.* § 300gg-111(c)(5)(E)(i); 9 U.S.C. § 10(a)(1)–(4). If the IDR entity decides in the provider's favor, then the plan must pay any additional compensation within 30 days of the decision. *Id.* § 300gg-111(c)(6).

The NSA also "empowers the Secretary of Health and Human Services, the Secretary of Labor, and the Secretary of the Treasury to oversee much of the [IDR] process." *Agag v. Cigna Health and Life Ins. Co.*, No. 3:25-CV-00498 (SRU), 2026 WL 1021213, *3 (D. Conn. Apr. 15, 2026) (citing 42 U.S.C. § 300gg-111(c)(2)(A)). Indeed, the NSA directs the Secretary of Health and Human Services, "in consultation with the Secretary of Labor and Secretary of the Treasury," to "establish a process to certify (including to recertify) [IDR] entities." *Id.* § 300gg-111(c)(4)(A). Further, the NSA authorizes the Department of Health and Human Services ("HHS") to impose civil monetary penalties on a health plan if the health plan fails to pay the IDR award to the provider within 30 days of the IDR entity's determination. *Id.* § 300g-22(b).

If HHS assesses a penalty, "[t]he entity assessed shall be afforded an opportunity for hearing by the Secretary upon request made within 30 days after the date of the issuance of a notice of assessment." *Id.* § 300gg-22(b)(2)(D). "[A]ny entity against whom an order imposing a civil money penalty has been entered after an agency hearing…may obtain review by the United States district court for any district in which such entity is located or the United States District Court for the District of Columbia by filing a notice of appeal in such court within 30 days of such order, and simultaneously sending a copy of such notice by registered mail to the Secretary." *Id.* § 300gg-22(b)(2)(E). "Any final decision,

order, or judgment of the district court concerning such review shall be subject to appeal as provided in chapter 83 of Title 28." *Id.* § 300gg-22(b)(2)(E)(iv).

HHS must also establish "a process to receive complaints of violations" of the NSA. 42 U.S.C. § 300gg-111(a)(2)(B)(iv). HHS has, therefore, created a "No Surprises Help Desk," which is administered by the Center for Medicare and Medicaid Services ("CMS"). *See No Surprises Act: How to Get Help and File a Complaint*, Center for Medicre and Medicaid Services (Aug. 2023), https://www.cms.gov/files/document/nsa-helpdesk.pdf. Providers may also submit complaints to CMS by phone or an online complaint. *See Providers: submit a billing complaint*, Center for Medicare and Medicaid Services (Feb. 4, 2026), https://www.cms.gov/nosurprises/policies-and-resources/providers-submit-a-billing-complaint.

## II. Whether Confirmation of an IDR Award is a Ministerial Act or Judicial Review

Despite NSA's statutory and administrative scheme, Petitioners rely on the decision in *Agag* opining that confirming an IDR award is a ministerial act rather than an act of judicial review. (Pet'rs' Resp. at 5–7); *Agag v. Cigna Health and Life Ins. Co.*, No. 3:25-CV-00498 (SRU), 2026 WL 1021213, at *9–10 (D. Conn. Apr. 15, 2026). Following the reasoning of *Agag*, which is not binding on this Court, Petitioners argue that courts perform

a ministerial act when confirming an IDR award because confirming an IDR award does not require a court to evaluate the merits of the IDR entity's decision and enforce substantive rights. (Pet'rs' Resp. at 5–7.) Rather, Petitioners argue that a court merely enters a judgment for an earlier binding determination. (*Id.* at 6.) The *Agag* court further reasoned that confirming an IDR award is not an act of judicial review because confirming an IDR award is analogous to confirming an arbitration award under Section 9 of the FAA and to confirming a foreign judgment under 28 U.S.C. § 1963. *Agag*, 2026 WL 1021213, at *10 (analogizing to the FAA); *Id.* at *10 n.2 (analogizing to 28 U.S.C. § 1963). This Court is not persuaded.

Petitioners (and the *Agag* court) do not identify a provision of the NSA that authorizes and instructs courts in mandatory language to confirm IDR awards and enter judgment. Indeed, Petitioners bring this action under Section 9 of the FAA, but Congress chose not to incorporate Section 9 of the FAA into the NSA, even though Congress chose to incorporate four paragraphs of Section 10 of the FAA into the NSA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). Congress's decision to incorporate provisions from one section of the FAA and not to incorporate any of the FAA's other provisions "indicates [that] Congress did not intend to permit judicial confirmation of IDR awards." *T.V. Seshan M.D., P.C. v. Blue Cross Blue Shield Assoc.*, Nos. 25-CV-499 (CS),

25-CV-1255 (CS), 25-CV-1264 (CS), 25-CV-2049 (CS), 2025 WL 3496382, at *6 (S.D.N.Y. Dec. 5, 2025) (collecting cases and citing 5 U.S.C. § 580(c)). Moreover, this Court may not read parts of Section 9 of the FAA into the NSA. *Id.* (citing *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019)).

Congress, on the other hand, has provided authority with mandatory instructions for courts to confirm arbitration awards under the FAA and to register foreign judgments. *See* 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."); 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."). Congress did not include such language in the NSA, despite knowing how to do so. The NSA, therefore, does not permit a court to confirm an IDR award as a ministerial act.

**III. Whether the No Surprises Act Confers Subject Matter Jurisdiction on Federal Courts**

As previously noted, Petitioners bring this action under Section 9 of the FAA. Section 9 of the FAA, however, does not independently confer subject matter jurisdiction. *Badgerow v. Walters*, 596 U.S. 1, 4, 142 S.Ct. 1310, 212 L.Ed.2d 355 (2022) ("The [Federal Arbitration] Act's authorization of a petition does not itself create jurisdiction. Rather, the federal court must have what we have called an 'independent jurisdictional basis' to resolve the matter.") (quoting *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008)); *see also Jeffrey Farkas, M.D., LLC v. Horizon Blue Cross Blue Shield of New Jersey*, 790 F. Supp. 3d 129, 133 (E.D.N.Y. 2025). To determine if an action brought under Section 9 has an independent jurisdictional basis, a court looks to "the face of the application itself." *Badgerow*, 596 U.S. at 9. Here, the Court must find an independent jurisdictional basis on the face of Petitioners' complaint asking for confirmation of its IDR award.

Petitioners argue that this action arises under federal law because (1) Petitioners' right to relief is created by the NSA, (2) the NSA establishes a federal regime governing payment disputes between out-of-network providers and healthcare plans, and (3) the NSA directs federal agencies to implement regulations to govern the IDR process in its entirety. (Pet'rs' Resp. at 10-11.) Aetna

states that it "takes no position on whether the Court lacks jurisdiction versus lacks authority to enforce [IDR] determinations under the federal No Surprises Act," but submits an exhibit listing prior district court decisions on this issue. (Resp't Resp. at 1); (ECF No. 16-1, Exhibit A to Aetna's Response to the Order to Show Cause ("Ex. A").) Thus, the Court only addresses Petitioners' arguments.

Petitioners essentially argue that the NSA creates substantive rights in providers who have obtained an IDR award and therefore bestows a right for those providers to seek relief from federal courts. This argument is problematic in at least two ways. *First*, Section 9 of the FAA enforces written contract rights, but Petitioners are not seeking to enforce a written contract. *See Farkas*, 790 F. Supp. 3d at 135-36. The parties do not have a contract with each other, but instead entered an IDR process through a statutory and regulatory scheme. *See* 42 U.S.C. § 300gg-111(c)(2)(A) (establishing the IDR process); *Agag*, 2026 WL 1021213, at *8 (citing *Farkas*, 790 F. Supp. 3d at 136). Courts that have ruled in favor of providers seeking to confirm IDR awards through a federal court have ruled that Section 9 need not apply to the NSA because the IDR awards, unlike arbitration awards, are automatically binding. *See e.g., Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227 (D. Conn. 2025). Assuming that Congress need not incorporate Section 9 because an IDR award

is automatically binding, that response does not state the appropriate body to enforce the IDR award. To answer that question, the Court assumes that the NSA provides Petitioners with substantive rights and looks to the remedial scheme provided by the NSA.

*Second*, assuming the NSA imbues Petitioners with substantive rights, the Supreme Court, has stated that "some remedial schemes foreclose a private cause of action to enforce even those statutes that admittedly create substantive private rights." *Alexander v. Sandoval*, 532 U.S. 275, 290, 121 S.Ct. 1511, 1522, 149 L.Ed.2d 517 (2001) (citing *Middlesex County Sewerage Auth. V. Nat'l Sea Clammers Ass'n.*, 453 U.S. 1, 19–20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). To be sure, Congress explicitly (1) directs group health plans and health insurance issuers to cover emergency services and to send an initial payment or notice of denial of payment to the healthcare provider no later than 30 calendar days after receiving a bill for the provider's services, 42 U.S.C. §§ 300-gg-111(a)(1)(A)–(C); (2) binds both parties to the IDR entity's determination absent fraud or evidence of misrepresentation of facts, 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I); and (3) requires the complying payment to be made directly to the provider no later than 30 days after the date on which the IDR determination is made. 42 U.S.C. § 300gg-111(c)(6). Such language may reasonably be interpreted to create a substantive right in a provider holding a

binding IDR award in its favor.[1] *See Axis Neuromonitoring, LLC v. Aetna Inc.*, 824 F. Supp. 3d 217, 224 (D. Conn. 2026).

This Court, however, agrees with the *Axis* court in finding that Congress used language showing its intent that the NSA be enforced by administrative agencies, not private parties. *Id.*; *see also T.V. Seshan*, 2025 WL 3496382, at *8 (S.D.N.Y. Dec. 5, 2025); *East Coast Adv. Plastic Surgery, LLC v. Cigna Health and Life Ins. Co.*, No. 25 Civ 255 (PAE), 25 Civ. 1686 (PAE), 2025 WL 2371537, at *17 (S.D.N.Y. Aug. 4, 2025); *PHI Health, LLC v. Health Care Serv. Corp.*, No. 25 C 12406 (CPK), 2026 WL 1802985, at *4 (N.D. Ill. June 23, 2026); *SpecialtyCare, Inc. v. Kaiser Found. Health Plan, Inc.*, No. 24-CV-09342-JST, 2026 WL 2043194, at *4 (N.D. Cal. July 15, 2026). Congress directs the HHS Secretary, in consultation with the Secretaries of Labor and the Treasury, to establish an audit process for qualifying payment amounts, 42 U.S.C. § 300gg-111(a)(2), to specify the contents of the notice that a party must submit to begin the IDR process, *id.* § 300gg-111(c)(1)(B), to establish the IDR process, *id.* § 300gg-111(c)(2), to articulate the process to certify (and recertify) and then select IDR entities, *id* § 300gg-111(c)(4), to provide reports to

[1] The Court notes, however, that the NSA typically refers to the health plans rather than the out-of-network providers, and statutes do not confer an implied private right of action if they focus on the regulated person or entity rather than the individual protected. *FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S. 608, 609, 146 S.Ct. 1546, 225 L.Ed.2d 184 (2026) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S.Ct. 1511 (2001)). The Court, therefore, emphasizes that it only assumes that the NSA provides substantive rights to out-of-network health providers.

Congress of the effects of certain IDR requests being suspended, *id.* § 300gg-111(c)(5)(E)(iv), and to publish information relating to the IDR process on the HHS's public website. *Id.* § 300gg-111(c)(7).

HHS is also empowered to enforce the NSA by imposing penalties on parties that do not comply with a binding IDR award. 42 U.S.C. § 300gg-22(b)(2). HHS may impose a maximum amount of $100 per day on a party that has failed to comply with the IDR award payment. *Id.* § 300gg-22(b)(2)(C)(i). The statute enables the entity assessed by HHS to challenge the assessment through a system of administrative review and, once administrative remedies have been exhausted, a system of judicial review. *Id.* §§ 300gg-22(b)(2)(D)—(E). When the assessed entity pays the penalty, it makes the payment to the HHS Secretary. *Id.* § 300gg-22(b)(2)(G). Lastly, the HHS has established a "No Surprises Act Help Desk," administered by CMS, to process complaints about violations of the NSA. *Id.* § 300gg-111(a)(2)(B)(iv).

Taken together, these provisions demonstrate that Congress intended the NSA to be administered and enforced by administrative agencies—primarily by HHS—and that federal courts should be involved only if a party believes that an IDR award should be vacated, not when a party seeks to enforce the IDR award. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); *see also FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S.

608, 616–17 (2026) (finding that the Investment Company Act does not confer an implied right of action in part because the SEC is the primary enforcer rather than private parties). Here, Aetna has not moved to vacate the IDR award and does not dispute that the IDR award is binding. Under the plain language of the NSA, therefore, Petitioners' IDR award is not subject to judicial review.

Petitioners, however, argue that Congress could not have intended for the administrative scheme to have precluded a private right of action because "a health insurance company that owes a large IDR award has every financial incentive to pay the daily penalty indefinitely rather than satisfy the award itself." (Pet'rs' Resp. at 7) (citing *Agag*, 2026 WL 1021213, at *13). But the NSA's enforcement structure is a policy choice of Congress that the courts may not rewrite. *See SpecialtyCare*, 2026 WL 2043194, at *4 ("a decision by Congress may be harsh and misguided, odd, or not wise, but that generally will not stop a court from enforcing it by its terms.") (quotation marks omitted (citing *United States v. Paulson*, 68 F.4th 528, 544–45 (9th Cir. 2023))). The administrative penalties may not be the most effective enforcement method, but "it is the method that Congress chose." *PHI Health, LLC v. Health Care Serv. Corp.*, No. 26 C 2954 (MFK), 2026 WL 2254879, at *5 (N.D. Ill. Aug. 5, 2026). Judicial

enforcement was not contemplated by Congress, as is clear from the statutory scheme.

IV. **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts may exercise their "sound discretion" to grant or deny leave. *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). Courts may properly deny leave to amend if amendment would be futile. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

Petitioners request leave to file an amended complaint and assert that they can allege facts to establish that the Court may exercise either federal question jurisdiction arising under Section 502(a)(1)(B) of ERISA or diversity jurisdiction over this action. (Pet'rs' Resp. at 15-16.) Either attempt, however, would be futile. Even if the Court exercised diversity jurisdiction over this action, as explained above, the Court cannot exercise judicial review unless a party is seeking to vacate the IDR award. Nor can the Court enforce the IDR award through ERISA because "general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 294-95

(S.D.N.Y. 2015) (quoting *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005) and citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989 (1976)); *see also Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. v. Halomd, Inc.*, No. 1:25-CV-2919-TWT, 2026 WL 2017291, at *16 (N.D. Ga. July 10, 2026) (citing *Anthem Blue Cross Life and Health Ins. Co. v. HaloMD LLC*, No. 8:25-CV-01467-KES, 2026 WL 982629, at *10 (C.D. Cal. Apr. 9, 2026)). Petitioners' request for leave to file an amended complaint is therefore denied for futility.

**CONCLUSION**

For the reasons given above, the Court dismisses Petitioners' complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(h)(3) and denies Petitioners' request for leave to file an amended complaint. Petitioners' motion to enforce judgment at ECF No. 3 is also denied as moot. The Clerk of Court is respectfully requested to enter judgment in favor of Respondents and close this case.

**So ordered.**

Dated: September 16, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York